**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**LISA MARIE GRALEY,**

      **Plaintiff,**

**vs.**                           **CIVIL ACTION NO. 2:18-CV-01124**

**NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered July 6, 2018 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Memorandum in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 13 and 16)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (ECF No. 13), **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 16); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court.

1

**Procedural History**

The Plaintiff, Lisa Marie Graley (hereinafter referred to as "Claimant"), protectively filed her applications for Titles II and XVI benefits on October 8, 2014 and June 23, 2016, respectively, and alleged that her disability began on September 15, 2013, because of "diabetes, cirrhosis, enlarged liver, enlarged spleen, fibromyalgia, degenerative disc disease, asthma, IBS, depression, and low blood platelets."[1] (Tr. at 178, 179-185, 193-194, 199) Her claim was initially denied on March 20, 2015 (Tr. at 104-108) and again upon reconsideration on June 17, 2015. (Tr. at 112-118) Thereafter, Claimant filed a written request for hearing on August 10, 2015. (Tr. at 119-120)

An administrative hearing was held on April 26, 2017 before the Honorable Julianne Hostovich, Administrative Law Judge ("ALJ"). (Tr. at 53-75) On July 3, 2017, the ALJ entered an unfavorable decision. (Tr. at 17-35) On September 1, 2017, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 175-177) The ALJ's decision became the final decision of the Commissioner on May 7, 2018 when the Appeals Council denied Claimant's Request. (Tr. at 1-7)

On July 5, 2018, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant, (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 10 and 11) Subsequently, Claimant filed a Memorandum in Support of Judgment on the Pleadings (ECF No. 13); in response, the Commissioner filed a Brief in Support

---

[1] In subsequent Disability Reports submitted at the initial and reconsideration levels, Claimant alleged that she developed "tendonitis in her hands that caused a disease in her veins" (Tr. at 223) and that she experienced "increased mood swings, anxiety, depression, panic attacks, nausea, shortness of breath, edema in ankle and feet, chest pain and diarrhea," as well as stomach pain and pain radiating into her feet and ankles, and also a "fatty tumor on ankle causing worsening pain in feet and numbness." (Tr. at 242)

of Defendant's Decision. (ECF No. 16) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 50 years old as of the alleged onset date and considered a "person closely approaching advanced age" throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(d), 416.963(d). (Tr. at 58) Claimant has a high school education and quit working as a home health care provider on September 15, 2013 when the patient she was working for passed away. (Tr. at 200, 201)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether

the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). Those Sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such

4

factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2016. (Tr. at 22, Finding No. 1) Moreover, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date of September 15, 2013. (Id., Finding No. 2) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: degenerative joint disease; diabetes mellitus; cirrhosis; and neuropathy.[2] (Id., Finding No. 3)

At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 25, Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work except:

> she can occasionally climb ramps, stairs, ladders, ropes and scaffolds. She can frequently balance. She can frequently use pedals with the bilateral feet. She can occasionally stoop, kneel, crouch and crawl. She can have occasional exposure to extreme cold, extreme heat, vibration, pulmonary irritants and hazards.

(Tr. at 26, Finding No. 5)

At step four, the ALJ found Claimant was capable of performing past relevant work as a

---

[2] The ALJ found Claimant also had the following non-severe impairments: hypertension, diverticulitis, gastritis, asthma, chronic [left] De Quervain's disease, and depression. (Tr. at 23)

cashier. (Tr. at 28, Finding No. 6) Finally, the ALJ determined Claimant had not been under a disability from September 15, 2013 through the date of the decision. (Tr. at 30, Finding No. 7)

**Claimant's Challenges to the Commissioner's Decision**

Claimant asserts two main errors in support of this appeal: first, she argues that the ALJ failed to provide an adequate explanation for the RFC assessment by failing to consider all the relevant evidence, specifically with respect to Claimant's chronic diarrhea (ECF No. 13 at 6-10); second, the ALJ did not follow the pertinent Ruling and Regulations or abide by controlling jurisprudence in analyzing Claimant's subjective symptoms. (Id. at 10-14)

With regard to the first alleged ground of error, Claimant contends that the ALJ formulated her RFC without having considered Claimant's functional limitations due to her gastrointestinal conditions, but nevertheless determined that same were "controlled" without citing any evidence supporting this. (Id. at 7-8) The medical evidence in addition to Claimant's testimony confirmed that Claimant continued to experience problems with chronic diarrhea that not only interfered with her ability to stay on task and complete a normal workday and workweek, but also interfered with treatment for her other impairments; the medical records did not demonstrate that her gastrointestinal conditions were "controlled." (Id. at 8-9) In short, the RFC finding is not supported by substantial evidence. (Id. at 10)

With respect to the second alleged ground, Claimant contends that the ALJ did not perform the required analysis concerning Claimant's subjective symptoms and further ignored the factors the Regulations require adjudicators to consider when assessing a claimant's credibility. (Id. at 12-13) Claimant states that the ALJ found that the objective evidence of record did not support her statements concerning her constant need to use the bathroom but did not address the factors or cite

to the evidence that would disprove Claimant's statements as required under law. (Id. at 13) Basically, the ALJ's determination that Claimant's statements were inconsistent with the evidence was based upon her own conclusions that Claimant's conditions were "controlled" but did not consider the evidence of how often Claimant had been prescribed medication for bowel infections or the side effects she experienced from her other medications. (Id.) Claimant argues the ALJ's credibility determination was deficient and constituted reversible error. (Id. at 14)

Claimant asks that the Court enter an order reversing the final decision and remand this matter back to correct these errors. (Id.)

In response, the Commissioner argues that the ALJ properly accounted for all of Claimant's credibly established limitations in her RFC assessment. (ECF No. 16 at 7) The Commissioner further argues that in addition to properly evaluating and determining that Claimant's symptoms associated with cirrhosis were controlled, she also appropriately evaluated Claimant's diverticulitis and concluded that it was not a severe impairment based on the medical evidence. (Id. at 8) Additionally, the Commissioner states that the ALJ discussed Claimant's diarrhea throughout her decision, and that the medical evidence contained references to this condition, but it also showed that just as frequently Claimant had denied having diarrhea. (Id. at 9) Importantly, the vocational expert identified jobs that Claimant could still perform if she needed close access to a bathroom due to this limitation. (Id.) The ALJ was also free to reject restrictive hypotheticals due to Claimant's bathroom use that are not supported by the evidence of record. (Id. at 9-10)

Next, the Commissioner argues that the ALJ properly performed the two-step analysis of Claimant's subjective complaints with respect to her pain and her need to use the bathroom, and that her analysis further complied with the Regulations. (Id. at 10) The ALJ discussed Claimant's

allegations and noted instances from the record as to why she found Claimant's allegations not entirely consistent with the evidence. (Id. at 11) Furthermore, the Commissioner argues that the ALJ did not assess her RFC without any regard to Claimant's alleged limitations, instead, the ALJ recognized that Claimant had some limitations due to these conditions, just not to the extent that precluded all work activity; the ALJ provided evidentiary support for her conclusions. (Id.)

The Commissioner asserts that substantial evidence supports the ALJ's RFC assessment as well as her credibility determination; ultimately, the decision finding Claimant was not disabled is also supported by substantial evidence and this Court should affirm. (Id. at 12)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Cirrhosis, Severe Impairment:

In June 2013, an ultrasound revealed that Claimant's liver was "mildly enlarged." (Tr. at 573) In August 2013, Claimant underwent an abdominal CT scan. (Tr. at 571) Hassam M. Haffar, M.D., analyzed the report and stated that revealed that Claimant's liver was "top normal to borderline enlarged." (Id.) On September 23, 2015, Ghali L. Bacha, M.D. evaluated Claimant, who returned for medication refills and to discuss lab results. (Tr. at 439) She complained of fatigue. (Id.) Her cirrhosis was assessed as mild and stable. (Tr. at 439-444) Dr. Bacha reviewed labs with Claimant and recommended that she change her dietary habits, exercise, and lose weight. (Tr. at 443) In October 2016, Dr. Bacha provided the same recommendations. (Tr. at 684)

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings: the arguments focus on the ALJ's treatment of symptoms related to Claimant's chronic diarrhea.

Diverticulitis, Non-severe Impairment:

Dr. Haffar performed a colonoscopy on December 10, 2014 in order to evaluate Claimant's rectal bleeding, anemia, history of polyps, diarrhea, history of irritable bowel syndrome, and abdominal pain and bloating. (Tr. at 558) Dr. Haffar observed "mild diverticulosis." (Id.)

Dr. Haffar performed another colonoscopy in March 2016 to evaluate Claimant's "intractable diarrhea." (Tr. at 570) He observed normal colonic mucosa throughout and "[d]iverticulosis noted in the left colon." (Id.) Dr. Haffar recommended that Claimant continue on her medications and that he would evaluate adding additional medications. (Id.)

Claimant often reported having diarrhea during her appointments with medical providers (Tr. at 382-383[4], 385-386[5], 534[6], 619-620[7], 636, 628, 623, 625-626[8], 686-689[9], 671-675[10]). She also frequently denied having diarrhea throughout the relevant period as well, though occasionally, she complained of symptoms from her diverticulosis, including rectal bleeding, constipation,

---

[4] This medical record concerns a visit to Dr. Haffar on January 31, 2014. (See also Tr. at 521-523)
[5] This medical record concerns a visit with Dr. Haffar on May 6, 2014. (See also Tr. at 524-527, 611-614) Claimant complained of experiencing three to six bowel movements a day and sometimes it was normal, there is a notation "bile → burns like fire" and that she was "sensitive" and "sore all over" (Tr. at 386, 525, 612); Dr. Haffar prescribed Xifaxan. (Id.)
[6] This medical record concerns a visit with Dr. Haffar on February 4, 2016. (See also Tr. at 622-623) Claimant also complained of epigastric pain/abdominal pain. (Tr. at 532-534)
[7] This medical record concerns a visit with Dr. Haffar on May 2, 2016.
[8] This medical record concerns a visit with Dr. Haffar on August 3, 2015. Claimant also complained of abdominal pain and hemorrhoid problems, chronic right upper quadrant pain, "new sharp" left lower quadrant pain, as well as occasional blood in stool. (Tr. at 626; See also Tr. at 394-395)
[9] This record concerns a follow-up visit with Dr. Bacha on August 16, 2016; Claimant complained of vomiting, fever, abdominal pain radiating into her back as well as diarrhea and urinary symptoms. She was advised to avoid daytime sleeping, heavy meals and alcohol within a few hours of bedtime, as well as to avoid caffeine in the evening. (Tr. at 689) She was encouraged to have regular exercise but not "near bedtime." (Id.)
[10] This medical record concerns a visit with Dr. Bacha on December 21, 2016. Claimant complained of urinary symptoms as well as right lower quadrant pain. Dr. Bacha "[e]xplained that symptoms and exam are most consistent with viral gastroenteritis" and encouraged use of probiotics and increased fluid intake.

and/or abdominal pain. (Tr. at 296[11], 336[12], 378[13], 380[14], 393[15], 528-531[16], 589, 615-616[17], 617-618[18], 630-631, 651-652[19], 677-680[20], 681-685[21])

In May 2016, Claimant was referred to endocrinologist Samar R. Sankari, M.D. for management of her diabetes. (Tr. at 710-715) Dr. Sankari indicated that Claimant was "not compliant with her medications as prescribed, not compliant with the recommended diet and exercise, and not novolog each time eat [*sic*]." (Tr. at 710) It was noted that Claimant took metformin in the past without side effects (Id.), however, by December 2016, she reported she was unable to take metformin due to diarrhea, but she remained noncompliant with her medications as prescribed or with the recommended diet and exercise. (Tr. at 720, 724) Dr. Sankari adjusted

---

[11] This medical record concerns an emergency department visit on April 23, 2015 for right side pain in the anterior lower rib area that Claimant had been experiencing for five days from trying to pull her husband's work clothes out of a washing machine; she denied any other injury, including chest pain, shortness of breath, bruising, swelling, nausea, vomiting, or diarrhea.

[12] This record is from an emergency department visit at Saint Francis Hospital on May 14, 2015 when Claimant complained of chest pain that hurt when she would take a deep breath (Tr. at 341); she denied having abdominal pain or diarrhea.

[13] This record concerns a follow-up visit to Dr. Haffar on September 17, 2013 for complaints of right upper quadrant tenderness. (Tr. at 377-378, 517).

[14] This record concerns a follow-up visit to Dr. Haffar on November 18, 2013 when Claimant complained of nausea, bloating gas and abdominal pain. (See also Tr. at 518-520)

[15] This record concerns Claimant's visit to Dr. Haffar on April 9, 2015 when she complained of rectal bleeding, pain and anal fissures.

[16] This record concerns Claimant's follow-up visit with Dr. Haffar on September 11, 2014 for her complaints of gas and bloating.

[17] This medical record concerns a visit with Dr. Haffar on September 22, 2016. Claimant did complain of fatigue and abdominal pain. (Tr. at 616)

[18] This medical record concerns a visit with Dr. Haffar on August 17, 2016. Claimant did complain of abdominal pain and bloating and nausea. (Tr. at 618)

[19] This medical record concerns a visit with Dr. Haffar on January 25, 2017. Claimant did complain of constant chronic abdominal pain as well as rectal bleeding and diarrhea. Claimant was also referred to the University of Kentucky for evaluation for a liver transplant.

[20] This record concerns a "sick visit" to Dr. Bacha's office on November 11, 2016; Claimant complained of urinary symptoms and pain during bowel movements as well as bloody stools. She was prescribed medication and encouraged to eat fruits, vegetables, whole grains and low-fat foods and the importance of regular exercise was stressed. (Tr. at 680)

[21] This record concerns an office visit to Dr. Bacha on October 17, 2016; Claimant complained of back and foot pain and bleeding hemorrhoids and she reported having "several bouts of diarrhea and blood" the day before. (Tr. at 684) Fiber supplementation and fluid intake were discussed. (Tr. at 685)

Claimant's medications and instructed that she remain off metformin but stressed compliance with her other medications as prescribed and with diet and exercise. (Tr. at 722-723, 726-727)

In January 2017, Claimant returned to Dr. Haffar for follow-up on her chronic abdominal pain; she reported some improvement in her diarrhea symptoms. (Tr. at 652) It was noted that Claimant was not taking Lactulose consistently due to rectal bleeding and though Xifaxan had been approved, Claimant had not yet filled the prescription at that time. (Id.) The plan was for Claimant to resume Lactulose as scheduled and to start Xifaxan as previously ordered; she was referred to the University of Kentucky for evaluation on her cirrhosis. (Tr. at 651-652) By February 2017, Dr. Haffar performed a sigmoidoscopy with hemorrhoid banding due to Claimant's rectal bleeding and prominent internal hemorrhoids. (Tr. at 654) Claimant tolerated the procedure well and was advised to follow a high fiber diet. (Id.)

Consultative Examination:

On March 2, 2015, Brandon Smith, M.D., performed a consultative examination of Claimant. (Tr. at 283-295) Her chief complaints were nonalcoholic steatohepatitis, asthma, chronic neck and back pain, and chronic multiple joint pains. (Tr. at 283) In discussing her symptoms, Claimant discussed having low blood platelets and feeling "foggy" at times in relation to her steatohepatitis and would take Lactulose only when she felt "foggy." (Id.) She also "complain[ed] of disabling issues" in relation to her breathing, spinal issues, and joint pain. (Tr. at 283-284) In her review of symptoms, she denied vomiting, abdominal pain, and blood in her stool and did not mention diarrhea. (Tr. at 285)

On examination, Claimant had some crepitus in both knees, normal strength and range of motion throughout the joints, and Claimant was neurologically intact. (Tr. at 287) There was no

12

tenderness or spasm in her legs, back, or upper extremities (Id.) Straight leg raising was normal and she had a normal gait. (Tr. at 286-287) Claimant's abdomen was obese with positive bowel sounds, but was nontender and otherwise normal. (Tr. at 286, 288)

State Agency Medical Opinion:

On March 19, 2015, Curtis Withrow, M.D. evaluated Claimant's records and determined that she could perform light exertional work with a number of postural and environmental restrictions. (Tr. at 85-87) Dr. Withrow discussed Claimant's cirrhosis, lower back issues, and fibromyalgia, and stated that her "other health conditions do not seem to further impact the level of physical work [function]." (Tr. at 87)

On June 15, 2015, Hedy Mountbatten-Windsor, M.D. evaluated the updated record and affirmed Dr. Withrow's findings. (Tr. at 98-100)

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that she last worked as a personal caregiver for a patient who was bedfast and required Claimant to pick her up to assist her when going to the restroom, cleaning her and putting her back into bed. (Tr. at 59) Claimant also would do all the cooking for this patient in addition to light cleaning, such as washing and changing her bed sheets. (Id.) She performed this work four days a week for twelve-hour shifts. (Tr. at 60) This work involved heavy lifting, more than 50 pounds and sometimes more than 100 pounds. (Id.)

Claimant worked as a personal caregiver in 2011, 2008 and 2007, and worked for about four months part-time at a convenience store as a cashier in 2006. (Tr. at 62-63)

Claimant testified that she could no longer work due to a platelet disorder caused by an enlarged liver and spleen, which causes her to be lethargic due to high ammonia levels. (Tr. at 63) Claimant stated that she takes Lactulose to get her ammonia level in balance, but it causes her diarrhea. (Id.) Though she enjoys being a caregiver, Claimant felt that she could endanger patients by having to go to the bathroom constantly and for being so tired and dizzy. (Tr. at 63-64)

Claimant explained that her high ammonia levels also cause memory problems and that she is "slow to think, slow to react." (Tr. at 64) Sometimes she gets so tired she had to go to bed, after a day or two, she feels better. (Id.)

Claimant estimated that she may go to the bathroom about 30 or 40 times in a week, or 12 to 15 times a day two to four days out of the week. (Tr. at 65) Having to go so frequently also causes her to have bowel infections once a month requiring medication. (Id.) In addition to diverticulitis, Claimant also has blood in her diarrhea, back pain that "goes along with it" as well as severe stomach pain where she "can't even hardly breathe." (Id.)

Regarding her diabetes and neuropathy, Claimant testified that she was instructed to keep her diabetes under control because they also affect her liver; she was evaluated for a liver transplant at the University of Kentucky but was advised that she would not survive a transplant at the time. (Tr. at 66) She keeps regular appointments with Dr. Haffar for her diabetes. (Id.) Claimant testified that she also suffers from pain in her feet due to neuropathy, though it had gotten better since she lost some weight. (Tr. at 67)

Claimant stated that she uses a nebulizer for her asthma about three to five times week, depending on her breathing. (Id.) Although Claimant has pain in her back, she tries to take over

the counter medication, but she has to watch what she takes due to her liver, so she will wear pain patches and Salonpas or use a heating pad. (Tr. at 67-68)

Claimant stated that she gets swelling in her legs and feet once or twice a week if she's on them more than usual and will have to keep them elevated. (Tr. at 68) Claimant also has problems sitting longer than 20 or 25 minutes due to her back and stomach pain, and will have to change position. (Tr. at 68-69) She estimated that she can stand for about 20 minutes at one time and walk about 10 to 12 feet and back, about the length of going to her mailbox. (Tr. at 69) She can lift about 20 pounds, the weight of her granddaughter, which is very difficult for her. (Id.)

Claimant testified that she spends a lot of her time in bed during the day as she is unable to sleep well at night because of pain or because she feels sick. (Id.) Claimant lives with her husband and they will share housework chores, but she does no yardwork. (Tr. at 70) Claimant will do the grocery shopping although she does not like to do it. (Id.) They both share in handling the household finances. (Id.)

As for social activities, Claimant stated that she will go to a restaurant once in a while and started to attend church some. (Id.)

<u>Vocational Expert ("VE") Testimony:</u>

The VE identified two prior occupations in Claimant's past relevant work life: a home health aide which the DOT classified as medium and semi-skilled, however, as Claimant performed it, heavy to very heavy; and a cashier, which the DOT classified as light and unskilled, and as Claimant performed it, light. (Tr. at 72) Given the controlling RFC as the first hypothetical, the VE opined that Claimant could perform her past relevant work as a cashier, but could also perform other jobs such as counter clerk, which is classified as light and unskilled, furniture rental

clerk and jewelry stringer. (Tr. at 72-73) Additionally, the VE opined that these jobs could still be performed if the hypothetical individual would need access to a restroom within five minutes of travel time from the work station. (Tr. at 73) However, if the individual required one extra unscheduled break of ten minutes each day outside of the normal morning, afternoon and lunch breaks, the VE testified that would put the individual off task beyond normal employer tolerances. (Id.) The VE also testified that if the hypothetical individual were off task 15% or more of the work day or be absent two or more days per month, then the individual could not maintain employment. (Tr. at 74)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists,

the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

The RFC Assessment:

Claimant contends that the RFC assessment is flawed because it does not account for her chronic diarrhea, plus the ALJ provided no explanation for this omission. (ECF No. 13 at 6-10.)

Residual functional capacity represents the *most* that an individual can do despite her limitations or restrictions. See Social Security Ruling 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC determination is an issue reserved to the Commissioner. See Id. §§ 404.1527(d), 416.927(d).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

As an initial matter, the undersigned notes that Claimant objected that the ALJ's step four finding that she remained capable of performing her past relevant work as a cashier was in error when the record shows that she only briefly worked in that position, part-time for less than four months (Tr. at 62-63), and at less than substantial gainful activity levels (Tr. at 189), and therefore failed to meet the definition of "past relevant work." (ECF No. 13 at 3, fn1) The Commissioner did not respond to this footnote objection. At the fourth step of the sequential evaluation process, the

ALJ must ascertain whether a claimant is capable of performing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1); see also 20 C.F.R. §§ 404.1565(a), 416.965(a); Connolly v. Bowen, 1989 WL 79726, at *3 (4th Cir. 1989) (holding that "in order to be classified as past relevant work, for the purpose of determining disability, the work must have been substantial gainful activity") (unpublished opinion) (citing Lauer v. Bowen, 818 F.2d 636 (7th Cir. 1987)).[22] According to the SSA evaluation guidelines for the year 2006, it is clear that Claimant's prior work as a cashier did not constitute substantial gainful activity. See, http://policy.ssa.gov/poms.nsf/lnx/0410501015. However, the ALJ herein proceeded to the fifth step in her analysis, and with the assistance of the vocational expert, determined that there were other jobs that Claimant could still perform. (Tr. at 29) To that extent, Claimant's objection to the ALJ's step four finding that she remained capable of performing her past work as a cashier is of no moment.

There is no dispute that Claimant's testimony regarding her issues with diarrhea is corroborated by the relevant medical records. Though as noted by the ALJ, the record contains no opinion evidence by any treating or examining physician that suggested Claimant's functional capacity was reduced due to symptoms associated with diverticulitis, including diarrhea, let alone her other impairments. (Tr. at 28) The ALJ acknowledged that "medical testing confirmed diverticulitis, but records do not suggest this condition is uncontrolled (Exhibits 11F, 13F, 14F,

---

[22] In these cases, the courts had determined that the adjudicators committed reversible error at step four because the claimants were deemed capable of performing their past relevant work. Of interest to the case sub judice, is that in reversing and remanding those final decisions, the courts explicitly stated that in order to determine whether the claimants retained the ability to perform any other work, the adjudicators should have proceeded to step five.

15F)." (Tr. at 23, 517-586, 592-649, 650-652, 653-657)[23] As noted *supra*, the ALJ determined that

Claimant's diverticulitis[24] was a non-severe impairment. (Tr. at 23) In assessing the RFC, the ALJ

acknowledged Claimant's testimony that she could not work due to "her enlarged liver, fatigue,

lethargy, dizziness, and bouts of diarrhea . . . [and] that she suffers from back pain, severe stomach

pain, and depression." (Tr. at 26-27) The ALJ further found that "[t]hough some fatigue has been

alleged, and other digestive issues have been documented (Exhibits 7F, 13F, and 14F), an

ultrasound of the liver showed only mild enlargement of the organ (Exhibit 11F)." The ALJ

concluded that Claimant's cirrhosis was "considered controlled (Exhibit 7F)."[25] (Tr. at 28, 404-

433, 592-649, 650-652)

      Claimant has alleged that her digestive symptoms would interfere with her ability to stay

on task and to complete a normal workday and workweek (ECF No. 13 at 7) and has argued that

the ALJ did not cite to any evidence in the record that would suggest that her problems with

diarrhea are controlled. As stated *supra*, the ALJ did cite Exhibits 11F, 13F, 14F, 15F that

referenced Claimant's diverticulitis symptoms, and from that evidence she determined the

condition was not "uncontrolled." Those medical records indeed document Claimant's digestive

symptoms for which Claimant was prescribed medications; those medical records also demonstrate

---

[23] It is noted that these Exhibits reference Dr. Haffar's treatment records from May 2013 through February 2017, most of which are discussed and referenced *supra*.

[24] The ALJ also referenced Exhibits 2F, 3F, 7F, 9F and 21F to support her finding that Claimant's asthma and hypertension were non-severe impairments. (Tr. at 23, 283-295, 296-306, 404-433, 466-511, 736-752) Both Claimant and the Commissioner pointed out in their briefs that Exhibit 7F pertains to medical records from the Associated Foot & Ankle Clinic where Claimant sought treatment for foot and toenail pain from May 2015 through September 2015.

[25] Again, as noted by the parties, the ALJ mistakenly cited Exhibit 7F which concerns treatment records related to Claimant's foot and nail treatment. Of interest here is that Exhibit 7F indicated that Claimant was initially prescribed Lamisil for fungal nails, however, in June 2015 she was instructed to discontinue taking this medication due to the lab work results concerning her liver condition. (Tr. at 421, 512) In her brief, the Commissioner states that the ALJ was referring to Exhibit 8F, which pertains to Claimant's cirrhosis. (ECF No. 16 at 8, fn1) The undersigned would note that Exhibit 8F concerns treatment records regarding Claimant's cirrhosis from Dr. Bacha dated February 2015 through January 2016.

that Claimant underwent colonoscopies, esophagogastroduodenoscopies, as well as a sigmoidoscopy with hemorrhoid banding. The medical records themselves did not suggest Claimant's condition was uncontrolled or contain any medical opinion that Claimant's condition was uncontrolled. Whether this evidence suggests Claimant's digestive condition, or diarrhea, as it relates to her diverticulitis is controlled or uncontrolled remains an evidentiary finding within the purview of the ALJ. In short, though Claimant may disagree with the ALJ's determination that her diarrhea is not "uncontrolled", this Court does not re-weigh conflicting evidence or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the undersigned **FINDS** that Claimant's argument that the ALJ failed to cite evidence in support of her determination that Claimant's digestive symptoms or diarrhea were not "uncontrolled" lacks merit, and further **FINDS** the ALJ's determination to that extent is supported by substantial evidence.

Hypothetical questions need only incorporate those limitations that an ALJ accepts as credible and that are supported by the record. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). As discussed above, the ALJ evaluated the evidence with respect to Claimant's allegation that she could not work due to diarrhea, and during her colloquy with the vocational expert, the ALJ specifically asked whether the jobs identified would be limited by an individual who needed bathroom access within a five-minute travel time from the workstation. (Tr. at 73) The vocational expert testified that the jobs identified would be unaffected. (Id.) Again, to the extent Claimant's allegation concerning her need for the bathroom precludes her from all work conflicts with the other evidence of record, as stated *supra*, the reconciliation of conflicting evidence was for the ALJ to resolve, not this Court. See SSR 96-8p, 1996 WL 3741784, at *7. Because the ALJ is not

20

required to incorporate every question posed to the vocational expert in her RFC assessment, and only incorporate those limitations established by the record, the undersigned **FINDS** the ALJ's RFC assessment is supported by substantial evidence.

<u>The Credibility Assessment:</u>

Claimant next contends that the ALJ failed to explain why she found her statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence of record in accordance with the pertinent legal authority. (ECF No. 13 at 10-14) In this case, the ALJ properly applied the two-step process espoused by <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996), and then proceeded to review Claimant's subjective complaints, which included her testimony, and reconciled them with the medical evidence of record. (Tr. at 26-28) The ALJ is bound by Social Security Ruling 16-3p, which clarifies the evaluation of symptoms, including pain: 20 C.F.R. §§ 404.1529, 416.929 require a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements. <u>See</u> <u>also</u>, <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985).

The Ruling further directs that factors in evaluating the consistency of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and

from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

Moreover, it is well known that credibility determinations are properly within the province of the adjudicator and beyond the scope of judicial review. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Davis v. Colvin, 3:13-CV-23399, 2015 WL 5686896, at *7 (S.D.W. Va. Sept. 8, 2015) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal.")

The ALJ began her analysis of Claimant's statements concerning the effects of her symptoms and pain acknowledging her assertions that she is unable to work because of her liver, lethargy, dizziness, bouts of diarrhea, back pain, stomach pain, as well as depression. (Tr. at 26-27) The ALJ also mentioned Claimant's estimation that she could only sit twenty to twenty-five minutes at a time and stand for twenty minutes at a time as well as lift or carry about twenty pounds. (Tr. at 27) The ALJ noted Claimant's testimony that she spent the majority of her day in bed. (Id.)

Next, the ALJ discussed at length Claimant's statements concerning her pain and other symptoms and compared them with the objective medical records. The ALJ noted Claimant's "relatively minimal and conservative treatment history are inconsistent with the severity of limitations the claimant has alleged regarding her pain and other symptoms." (Id.)

With regard to her "mild to moderate degenerative joint disease", the ALJ considered Claimant's complaints of pain in her neck, back, hands, wrists, right elbow, left shoulder, right

hip, knees, ankles and right foot. (Tr. at 27, 283-295) The ALJ noted that an x-ray of her feet "showed an abnormally elevated first metatarsal and degenerative changes" with joint space narrowing, an x-ray of her right knee showed mild osteoarthritis and the consultative examination showed some crepitus in both knees. (Tr. at 27, 283-295, 406[26]) However, Claimant also demonstrated normal strength and range of motion, was neurologically intact, no tenderness or spasm in her legs, back, upper extremities, normal straight leg raising, and that she could ambulate normally. (Tr. at 27, 283-295) The ALJ further considered that Claimant's symptoms as they related to degenerative joint disease were documented throughout the record (Tr. at 283-295, 307-364, 400-403, 404-433, 512-516) and were treated conservatively with anti-inflammatory medications (Tr. at 404-433, 512-516), and that injection therapy in her hand "proved somewhat successful" (Tr. at 736-752)[27], though Claimant did not participate in physical therapy, have surgical intervention or pain management – the ALJ found her symptoms "have remained stable." (Tr. at 27) Despite Claimant's reports of pain, the ALJ noted that the records from her treating podiatrist did suggest foot pain and tenderness, however, her pain was generally controlled. (Id.)

With regard to her symptoms caused by diabetes mellitus and neuropathy, the ALJ recognized that Claimant's long-standing condition is documented throughout the record "and is characterized by elevated blood glucose levels." (Tr. at 27, 283-295, 365-399, 400-403, 404-433, 466-511, 512-516) However, the ALJ also noted that the record demonstrated that her blood sugars

---

[26] The ALJ referenced Exhibit 6F, however, the x-ray showing feet abnormality is referenced in Exhibit 7F, records from Mohammad Imani, D.P.M. of the Associated Foot & Ankle Clinic.

[27] The ALJ again referenced Exhibit 6F, however, records concerning injection therapy are contained in Exhibit 21F; Claimant received treatment for symptoms related to carpal tunnel syndrome, skin tags on her neck and shoulder, as well as lesions on her right foot, left thigh, left calf, left cheek, right hand and right lower leg. (Tr. at 743-747) Those records show that she underwent a left carpal tunnel release in April 2012 and was also treated with injection therapy from December 2011 through June 2015 as well as left first dorsal compartment release with good results. (Tr. at 738-745, 748)

"are relatively controlled", that her neuropathy is "somewhat controlled with medications and generally stable[]", that physical examinations by her endocrinologist "proved normal", and that Claimant had neither been hospitalized nor suffered from any organ damage due to her blood sugar and diabetic issues. (Tr. at 28, 400-403, 404-433, 466-511)[28]

Finally, the ALJ considered Claimant's non-alcoholic steatohepatitis cirrhosis, and acknowledged this condition caused Claimant to experience "some fatigue" as well as "other digestive issues have been documented" (Tr. at 404-433, 592-649, 650-652), though an ultrasound of the liver showed the organ was only mildly enlarged (Tr. at 517-586) and that her cirrhosis "is considered controlled." (Tr. at 28, 404-433)[29]

As stated *supra*, the ALJ noted that the record contained no opinion evidence that Claimant was disabled or otherwise limited greater than determined in her decision. (Tr. at 28) The ALJ acknowledged that Claimant's treating podiatrist, Dr. Imani recommended that Claimant "modify activities of daily living based solely upon allowing for mild symptoms", however, the ALJ found this statement "vague and provides no specific restriction in functioning." (Id.) In sum, the ALJ found that Claimant was not as limited by her impairments as alleged and her credibility analysis did not offend Fourth Circuit jurisprudence. Accordingly, the undersigned **FINDS** that the ALJ's credibility assessment was supported by substantial evidence.

Finally, the undersigned **FINDS** that the decision finding Claimant was not disabled is supported by substantial evidence.

---

[28] It is again noted that Exhibit 6F was cited in support of these findings, however, none of the cited Exhibits, particularly those provided in Exhibit 9F by Lee Ann Skaff, M.D., who follows Claimant for her diabetes mellitus, had reported that Claimant's blood sugars were not uncontrolled.

[29] As pointed out by both parties, the ALJ cited Exhibit 7F which concerned Claimant's treatment of her neuropathy in her feet, however, the other Exhibits cited by the ALJ pertain to Dr. Haffar's treatment of Claimant's symptoms related to non-alcoholic steatohepatitis cirrhosis. However, an overview of these medical records indicate that they are not inconsistent with the ALJ's findings.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for Judgment on the Pleadings (ECF No. 13), **GRANT** the Defendant's request to affirm the decision (ECF No. 16), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of

such objections shall be served on opposing parties, District Judge Goodwin, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: February 13, 2019.

Omar J. Aboulhosn
United States Magistrate Judge

26